SECOND DIVISION OF THE LACONIA LEVEE DISTRICT *v.*
LACONIA LEVEE DISTRICT.

Opinion delivered December 11, 1916.

1.  LEVEE DISTRICTS—SUBDIVISION—EXISTING DEBTS.—Under Act 141,
p. 579, Acts of 1913, dividing the territory of a levee district, *held*, the
act intended to *pro rate* the funds in the hands of the original levee
district at the time of the passage of the act, after deducting the
indebtedness of the original district at that time, and requiring the
second district to pay its *pro rata* part of any then existing indebted-
ness after deducting the funds on hand.

2.  LEVEE DISTRICTS—SUBDIVISION. While the Legislature may divide
one district into two, and adjust their liabilities, such adjustment
must not be arbitrary.

3.  LEVEE DISTRICT—SEVERANCE—LIABILITY ON CONTRACTS. Where
the Legislature has organized a new levee district out of a district al-
ready organized, the Legislature can not make the original district
liable on a contract for the benefit of the new district, made after the
passage of the act, severing the districts.

Appeal from Desha Chancery Court; *Z. T. Wood*,
Chancellor; affirmed.

STATEMENT BY THE COURT.

Prior to the 7th of March, 1913, certain territory
in Phillips and Desha counties had been incorporated
into the Laconia Levee District. See Acts of 1891, p.
169, and Acts of 1893, p. 253.

On March 7, 1913, an act was passed creating an
independent levee district, carved out of the Laconia
Levee District, and designated as "Second Division of
Laconia Levee District." The Second Division of the
Laconia Levee District thus created comprised the
levees that were located in Phillips County. This left
in the original Laconia Levee District the levees situ-
ated in Desha County.

At the time of the passage of the act of March 7,
1913, No. 141, p. 579, Acts 1913, the original Laconia
Levee District was under a contract with one Harry
Adams for the placement of 100,000 yards of dirt as a
banquette of the levee located in Phillips county,
which contract was dated September 3, 1912. Up to the
time of the passage of the act of March 7. 1913, Adams

had done work under this contract, and continued to do work under such contract after the passage of the above act until the two districts refused to further pay him. After the passage of the act, the secretary of the original district issued to Adams warrants drawn on the treasurer of the district in payment of levee work done by him in Phillips county. Warrants had been issued for the work done before the passage of the act and the secretary continued to issue warrants under the orders of the board of directors of the original levee district, and the treasurer of that district continued to pay those warrants until as late as July 7, 1913. The warrants that were thus issued and paid after the passage of the act of March 7, 1913, amounted in the aggregate to $4,579.65. At the time of the passage of the act there was in the treasury of the original Laconia Levee District the sum of $6,166.35.

Upon the refusal of both districts to further pay Adams he brought suit against them for breach of contract and recovered judgment against them in the sum of $897.67. A controversy arose between the two districts as to their respective liabilities to each other under the act, and as to their respective liabilities for the amount that had accrued under the Adams contract. This suit was instituted by the appellant against the appellee to determine that controversy.

The chancery court, upon substantially the above facts, found among other things:

"1.   That on the 7th day of March, 1913, there was in the treasury of the defendant the sum of $6,-166.35."

"2.   That under the terms of the act of March 7, 1913, the plaintiff was entitled to twenty and one-half forty-fifths of said fund, amounting to the sum of $2,-778.16."

"3.   That from and after the date of the passage of said act of March 7, 1913, defendant paid to Harry Adams the sum of $4,579.65 for work done on the contract of September, 1912, in Phillips county, and is entitle to be reimbursed in that sum by the plaintiff; and

that defendant is not liable, as between it and plaintiff
for any part of the judgment rendered in the Desha
Circuit Court in favor of Harry Adams and against
both plaintiff and defendant."

The court further found that defendant was liable
to the plaintiff for its pro rata of the value of certain
lands taken for levee purposes prior to the passage
of the act, amounting to $318.75, and that after cred-
iting the plaintiff with such sum there was a balance due
the defendant amounting, in principal and interest, to
the sum of $1,697.63, and entered judgment in favor
of the appellee for such sum, and the appellant brings
this appeal.

Such other facts as may be necessary will be stated
in the opinion.

*Moore, Vineyard & Satterfield* and *J. G. Burke*,
for appellant.

The Harry Adams debt was an outstanding legiti-
mate and existing indebtedness against the district at
the time of the passage of the act and was properly pro
rated as provided by the act. The Legislature has the
right to adjust such matters and has done so. 16 Am.
& E. Enc. L., 162; 18 S. W. 438; 2 Words & Phr. (2d
series), 1027. No abuse of discretion or power is shown.
107 Ark. 291; 98 *Id.* 113, 117. The act of the Legisla-
ture is final. The statute is plain and unambiguous.
110 Ark. 99; 52 *Id.* 430; 73 *Id.* 387; 33 *Id.* 497; 92 U. S.
307; 100 *Id.* 514; Act 141, Acts 1913. The court erred
in holding that defendant was not liable.

*F. M. Rogers,* for appellee.

The court properly construed the act in accordance
with the legislative will. The decree is correct and
should be affirmed. No error is shown.

WOOD, J. (after stating the facts). A correct
solution of the issue presented by this appeal involves
a construction of Act No. 141 of the Acts of 1913, ap-
proved March 7, 1913. The first section of that act
creates the appellant levee district. Other sections

provide for the maintenance, construction, repair and control of the levees already situated in the appellant district, and those thereafter to be constructed, and the levying and collecting of all taxes in such district, including those assessed in the year 1912 and collected in 1913, and the expenditure thereof, and place these matters under the exclusive control, supervision and management of the board of directors of the appellant.

The fifth section of the act is as follows: "Should there be any funds in the hands of the treasurer of the Laconia Levee District at the time of the passage of this act in excess of any legitimate indebtedness of said district, then such a part of said fund shall be paid over to the treasurer of the division herein created in the ratio as the mileage in said division bears to the total mileage of the levee in said Laconia Levee District. In the event the said Laconia Levee District, at the time of the passage of this act is indebted in any amount whatever in excess of the funds on hand, then the division hereby created shall pay its proportional part of such indebtedness in the ratio as the number of miles of levee in said division bears to the total miles of levee in said Laconia Levee District. For the purpose of ascertaining such surplus or indebtedness, as the case may be, the directors of said division shall have access to the books and records of the Laconia Levee District."

Appellant contends that the court erred in holding that the appellee was not liable as between it and appellant for any part of the judgment rendered by the Desha Circuit Court against both appellant and appellee. But the appellant does not bring into its abstract any evidence to sustain this contention. The only reference to this judgment that is contained in the abstract is that recited in the answer, as follows: "That the said Harry Adams filed suit in the Desha Circuit Court against the plaintiff and defendant districts, alleging therein that he had been prevented by defendant districts from completing said contract, and prayed judgment for damages; that said suit resulted in a

judgment against defendant districts in the sum of $897.67."

It appears affirmatively from these recitals that the judgment rendered against the districts was not for any indebtedness due from the Laconia Levee District to Harry Adams at the time of the passage of the act, but, on the contrary, that the judgment was for damages caused by the conduct of the districts in perventing him from completing his contract. Since it appears from the testimony that Adams was still performing work under his contract after the passage of the act of March 7, 1913, the damages for which he recovered judgment accrued after the passage of the act, and therefore were not an indebtedness existing at the time of the passage of the act. The amount of the judgment therefore was not an indebtedness to be pro rated under the act, and the court did not err in so holding.

It was the manifest purpose of the act, as shown by section 5, to pro rate the funds in the hands of the original levee district at the time of the passage of the act, after deducting the indebtedness of the original district at that time, and to require the second division to pay its *pro rata* part of any then existing indebtedness after deducting the funds on hand.

Now the proof shows that at the time and after the passage of the act, the performance of the work contemplated by the contract was not complete, and the contract itself in express terms shows that the work which was being done was banquette work, comprising 100,000 yards, more or less. Although the work was done under a contract executed prior to the passage of the act, yet no indebtedness against the original levee district would accrue under the contract until the work was actually done, and if this work was done subsequent to the passage of the act of March 7, 1913, then the indebtedness therefor did not exist at the time of the passage of the act, but was an indebtedness accruing thereafter.

Since the act created the second division and gave its governing board exclusive control, supervision and

management of the work of constructing, repairing and maintaining the levees of the second division, it is clear that the appellee, the original Laconia Levee District, after the passage of the act had no longer any duty to perform with reference to the levees situated in the appellant district. While the appellee was still liable under its contract with Adams for any indebtedness that accrued either before or after the passage of the act under said contract, yet, as between the appellee and the appellant, by the terms of the act, appellee was relieved of any indebtedness that accrued under that contract after the passage of the act, and appellant could not hold appellee even for a proportional part of such indebtedness.

The court found that the appellee paid Adams from and after the passage of the act, $4,579.65 for work done under the contract, and that appellee was entitled to be reimbursed in that sum by the appellant.

While there is no express finding that the work for which this sum was paid was done subsequent to the passage of the act of March 7, 1913, yet the finding of the court was tantamount to that, and such was the effect of the judgment. It can not be said that such a finding is clearly against the preponderance of the evidence.

The testimony of the secretary of the Laconia Levee District shows that at the end of the month the engineer estimated the work done during the preceding month and gave orders to the contractor on the secretary to cover those estimates, and that the secretary, upon such orders, would issue his warrant in favor of the contractor on the treasurer of the district for the payment of the money. The testimony shows that warrants covering the sum of $4,579.65 were issued March 28, May 31, and July 1, 1913, and that these checks were paid by the treasurer respectively March 29, June 2 and July 7, 1913. True, the secretary of the appellee, when asked why these warrants were issued after March 7, 1913, if the work was done in Phillips county, answered: "Because they had been issued before this

time by the old members of the original district to honor Mr. Jordan's orders for work done, and I continued to give orders until I was instructed otherwise." He also testified that the warrants he paid out to Mr. Adams were ordered by the board of the original Laconia Levee District.

Now, it must be remembered that, so far as this record shows, the board of the original Laconia Levee District was not changed by the act of March 7, 1913, creating the appellant district, and it was therefore literally true that the warrants issued by the secretary after the passage of the act were ordered by the board of the original Laconia Levee District. Taking the testimony of the secretary of the board as a whole, it shows that after the passage of the act creating the appellant district, he continued to give warrants on the orders of the board of the Laconia Levee District in the same manner that he had done before the passage of the act, towit, upon estimates made by the engineer at the end of the month for work done during that month.

The burden was upon the appellant to show by a preponderance of the evidence that these warrants were issued and paid upon an indebtedness existing at the time of the passage of the act. It has not met that burden.

The proof shows that there were forty-five and a half miles of levee in the original levee district, and that twenty and one-half miles of this levee were in Phillips county, and that all the work that had been done under the Adams contract was done on the levee situated in Phillips county.

Appellant contends that it was within the exclusive province of the Legislature to define the boundaries of the two districts and to adjust the liabilities of said districts after their separation. While this is true, such adjustment must not be arbitrary, that is, without any just and reasonable basis for the legislative determination. *Moore* v. *Board of Levee Dist.*, 98 Ark. 113, 117.

It was not within the power of the Legislature to make the property owners of the appellee liable for levee work done under the contract with Adams after the passage of the act of March 7, 1913, on the levee situated in Phillips county. To relieve the property owners of appellant of the cost of the levee work done under the Adams contract after the passage of the act, and to lay the burden of the cost of such work upon the property owners of the appellee without a hearing and without corresponding benefit to them, would be taking their property without due process and without compensation. If the act had to be so construed it would be unconstitutional and void.

The chancery court correctly construed the act. Its findings of facts are in accord with the preponderance of the evidence and its decree must therefore be affirmed.